# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| TRACI LYNN GUTHRIE,<br><br>    Movant,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>    Respondent. | No. C21-3013-LTS<br>(Crim. No. CR19-3019-LTS)<br><br>**MEMORANDUM**<br>**OPINION AND ORDER** |

## I.    INTRODUCTION

Traci Lynn Guthrie has filed a motion (Doc. 1) to vacate, set aside or correct her sentence pursuant to 28 U.S.C. § 2255. In prior orders (Docs. 4, 14), I denied three of Guthrie's four claims for relief. However, I found that an evidentiary hearing was required for the remaining claim, which asserts ineffective assistance of counsel based on trial counsel's alleged failure to file an appeal despite a request to do so.

The evidentiary hearing was held on June 1, 2023. *See* Doc. 16. Both Guthrie and her trial counsel, Chad Primmer, testified. The Government submitted Government Exhibit 1 (Doc. 5), an affidavit from Primmer. I also took judicial notice of other materials filed in this case and the underlying criminal case. I heard arguments at the conclusion of the evidence and took the matter under advisement. The "failure to appeal" claim is now ready for decision.

## II.    SUMMARY OF THE EVIDENCE

The relevant facts concerning Guthrie's conviction, sentencing and § 2255 motion are set forth in my prior orders (Docs. 4, 14). In her motion, Guthrie asserts that she asked Primmer to file an appeal but he failed to do so. Doc. 1 at 4-5. During the

evidentiary hearing, Guthrie testified that she received a mandatory minimum 10-year sentence. She had pleaded guilty to Count 1 (conspiracy to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine which contained 5 grams or more of actual (pure) methamphetamine), Count 6 (possession with intent to distribute a mixture or substance containing a detectable amount of methamphetamine which contained 5 grams or more of actual (pure) methamphetamine) and Count 8 (possession of a firearm in furtherance of a drug trafficking crime) of the Superseding Indictment pursuant to a plea agreement (Doc. 73). Guthrie acknowledged in her plea agreement that Counts 1 and 6 were punishable by a mandatory minimum sentence of 5 years' imprisonment, *see* Crim. Doc. 73 at ¶¶ 2-3, and that Count 8 was punishable by a "**mandatory minimum sentence of 5 years' imprisonment which must be consecutive to any term of imprisonment imposed on Counts 1 and 6**." *Id.* at ¶ 4 (emphasis in original). Guthrie also acknowledged in her plea agreement that after being advised of her appeal rights, she knowingly and voluntarily waived her right to appeal the conviction and sentence imposed. *Id.* at ¶ 43.

Chief United States Magistrate Judge Kelly K.E. Mahoney discussed these paragraphs with Guthrie during her plea hearing. *See* Crim. Doc. 111 at 13-14. After discussing that Counts 1 and 6 were punishable by a mandatory minimum sentence of 5 years, she explained:

> Even if the judge orders that the sentences on Count 1 and 6 run concurrently or at the same time, the judge has to order that the sentence on Count 8, the firearm charge, run back to back. So you'll have to serve that sentence on Count 8 after you've completed any sentences on Counts 1 and 6.

*Id.* at 15. Guthrie, who was placed under oath at the beginning of the plea hearing, indicated she understood. *Id.* Guthrie also stated she had received the plea agreement and had time to read it and review it carefully with her lawyer. *Id.* at 20. Judge Mahoney also discussed the appeal waiver, explaining that Guthrie had agreed to waive or give up

almost all of her rights to file an appeal. Guthrie stated she had reviewed that paragraph carefully with her lawyer and understood the rights she was giving up. *Id.* at 24. She had no questions about the sentencing procedure and stated no one had forced or pressured her to plead guilty or made promises to her outside of the plea agreement to get her to plead guilty. *Id.* at 30-31. She indicated she understood the plea agreement, the potential punishment she faced and the sentencing procedure and changed her plea to guilty as to Counts 1, 6 and 8. *Id.* at 32-33.

During the evidentiary hearing, Guthrie testified that she had issues communicating with Primmer throughout her case. She further testified that the day before her sentencing hearing, Primmer told her that she was going to receive a 10-year sentence and there was nothing he could do about it. According to Guthrie, she responded by telling Primmer she did not want to do 10 years and wanted to file an appeal. However, she did not mention an appeal to Primmer immediately following the sentencing hearing, while the two of them were still together in the courtroom. Instead, she testified that she, along with various family members, tried to call and text Primmer in the days after the hearing but he did not respond.

Guthrie testified that she did not understand, when she changed her plea to guilty, that she was going to be sentenced to at least 10 years in prison. Indeed, she claims that she understood 10 years to be the maximum sentence, not the lowest she could receive. Guthrie cited domestic problems with her previous husband (and co-defendant) as an issue she intended to raise on appeal.

Primmer testified that he has been a licensed attorney since 2002 and has practiced criminal law since that time. Primmer was appointed to represent Guthrie at the beginning of her case and continued to represent her throughout. He testified that Guthrie never directed him to file a notice of appeal and that, if she had, he would have done so. He did not recall discussing an appeal either the day before sentencing or immediately

3

following sentencing. He also does not recall Guthrie or anyone in her family attempting to contact either his cell phone or his office regarding an appeal after sentencing.

### III. DISCUSSION

A prisoner in custody under sentence of a federal court may move the sentencing court to vacate, set aside or correct a sentence. *See* 28 U.S.C. § 2255(a). To obtain relief pursuant to § 2255, a federal prisoner must establish:

> [T]hat the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law or [that the judgment or sentence] is otherwise subject to collateral attack.

*Id.*; *see also* Rule 1 of the Rules Governing § 2255 Proceedings (specifying scope of § 2255). If any of the four grounds are established, the court is required "to vacate and set aside the judgment and [to] discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

Guthrie alleges that her constitutional right to effective counsel was violated due to Primmer's failure to file an appeal despite being directed to do so. The failure to file a requested appeal constitutes ineffective assistance of counsel sufficient to vacate, set aside or correct a sentence under § 2255:

> An attorney's failure to file a notice of appeal upon the client's request constitutes ineffective assistance of counsel, and no specific showing of prejudice is required. *Watson v. United States*, 493 F.3d 960, 963-64 (8th Cir. 2007) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000)). Even if the client waived his right to appeal as part of a plea agreement, prejudice is presumed if the client asked his attorney to file a notice of appeal and the attorney did not do so. *Id.* at 964.

*United States v. Sellner*, 773 F.3d 927, 930 (8th Cir. 2014). The burden of proof with regard to an ineffective assistance of counsel claim lies with Guthrie, as the movant. *See, e.g., Walking Eagle v. United States*, 742 F.3d 1079, 1082 (8th Cir. 2014).

4

Based on the evidentiary record before me, I find that Guthrie has failed to establish that she directed Primmer to file an appeal on her behalf. In making this finding, I credit Primmer's testimony over Guthrie's to the extent that their testimony is in conflict. This is based on my observations of their testimony as well as other factors that cause me to find Primmer's testimony to be more credible. Primmer testified that if Guthrie would have asked him to file a notice of appeal, he would have done so. Primmer is an experienced criminal defense attorney. There is no evidence that he had any motive or reason to refuse to file an appeal if Guthrie had asked him to do so.[1]

By contrast, Guthrie was not a credible witness. For starters, she made repeated claims that are flatly contradicted by the plea agreement and her sworn testimony during her change of plea hearing. She now claims that she was surprised to learn, the day before her sentencing hearing, that she faced a 10-year minimum sentence. However, in her plea agreement and during the change of plea colloquy, Guthrie was advised that the minimum sentence on Counts 1 and 6 was five years in prison and that Count 8 required a consecutive (or "back to back") sentence of at least five additional years. Crim. Doc. 73 at 2; Crim Doc. 111 at 14-15. During the plea hearing, Judge Mahoney repeatedly asked Guthrie if she understood her sentencing situation and Guthrie stated that she did.

---

[1] In making this credibility finding, I am aware of my decision in *Hayes v. United States*, 535 F. Supp. 3d 844 (N.D. Iowa 2021), in which I found that Primmer failed to file a notice of appeal for a different client despite an unambiguous request to do so. In *Hayes*, Primmer was concerned that an appeal would be against his client's interests, as it could have exposed him to a longer sentence if the Government cross-appealed on the issue of whether the Armed Career Criminal Act applied. *Id*. at 851-52. Primmer ultimately withdrew from the representation rather than complying with his client's directive. *Id*. at 851. During the § 2255 evidentiary hearing in *Hayes*, Primmer acknowledged that his client advised him that he wanted to appeal. *Id*. at 852. Thus, Primmer's truthful testimony during that hearing supported a finding that he had failed to file an appeal despite being requested to do so. Here, no evidence was presented to suggest that an appeal might have been contrary to Guthrie's interests. As such, the motive for withholding a notice of appeal that was present in *Hayes* does not exist here. Moreover, and again contrary to the situation in *Hayes*, Primmer testified to having no recollection of Guthrie directing him to file an appeal. For these reasons, my ruling in *Hayes* does not compel me to find that Primmer's testimony in this case lacks credibility.

5

*See, e.g.,* Crim. Doc. 111 at 14-18. Moreover, at the beginning of Guthrie's sentencing hearing I addressed the fact that there was a "statutory minimum sentence in this case of 120 months." Crim. Doc. 112 at 7. Primmer responded by stating his agreement. *Id*. When Guthrie was afforded her right of allocution, she could have explained that she was surprised that she faced a mandatory sentence of at least 10 years. She made no mention of this alleged surprise. *Id*. at 13-15. For these reasons, I find her current claim of being surprised about her 10-year minimum sentence to be completely devoid of credibility.

Guthrie also testified during the evidentiary hearing that she was not satisfied with the level of communication she received from Primmer and that she felt forced or compelled to sign the plea agreement. Again, these claims are flatly contradicted by both Guthrie's sworn testimony during the plea hearing and the terms of the plea agreement she signed. During the plea hearing Guthrie answered in the affirmative when Judge Mahoney asked if she had "generally been satisfied" with Primmer's performance and if she "had enough time to talk to him about your case." Crim. Doc. 111 at 8-9. Guthrie further testified that no one had forced or pressured her to plead guilty, or made any threats or promises (beyond the promises in the plea agreement) to get her to plead guilty. *Id*. at 31. She agreed that it was her own decision to plead guilty and that she was pleading guilty to Counts 1, 6 and 8 because she was, in fact, guilty of those offenses. *Id*. at 32-33. The plea agreement, as signed and initialed by Guthrie, includes similar representations. Crim. Doc. 73 at 17-18. Guthrie's current claims of being forced or pressured to plead guilty, and of not having had sufficient time to confer with Primmer before deciding to plead guilty, are not credible.

Guthrie's current claim that she wanted to proceed with an appeal is also contrary to her plea agreement and the change of plea colloquy. Guthrie signed an agreement that included a section entitled "Waiver of Appeal" and initialed the applicable paragraph. Crim. Doc. 73 at 16-17, 19. During the plea hearing, Judge Mahoney explained the appeal waiver to Guthrie and Guthrie answered in the affirmative when asked if she

6

understood "the rights you're giving up there." Crim. Doc. 111 at 12, 24. Of course, a defendant may decide to file an appeal despite entering into a plea agreement that includes an appeal waiver. However, the existence of the appeal waiver, and Guthrie's acknowledgement under oath that she understood the waiver, casts further doubt on her current claim that she told Primmer to file an appeal.

The lack of evidence concerning post-sentencing communications between Guthrie and Primmer also weighs against Guthrie's claim. Guthrie testified that she, along with various family members, attempted to contact Primmer by phone calls and text messages after the sentencing hearing to advise him of Guthrie's desire to appeal. Apart from Guthrie's own testimony, however, the record is devoid of evidence supporting this claim. No family members testified about any efforts they made to contact Primmer. No copies of phone records or text messages were produced. Moreover, if (as she now claims) Guthrie gave Primmer a clear and unambiguous directive to file an appeal the day before the sentencing hearing, it seems unlikely that she and various family members would have been so frantically attempting to contact Primmer after the hearing. After all, if Guthrie had already told Primmer to appeal, she should have had no reason to suspect that he would not do so.[2]

Also weighing against Guthrie is the fact that she has a significant incentive to provide false testimony, as she has served only a small portion of her 10-year sentence and, understandably, would like to find a way to reduce that sentence.[3] This natural incentive, alone, creates a reason to be suspicious of Guthrie's testimony. That suspicion

---

[2] Relatedly, despite allegedly telling Primmer to appeal, there is no evidence that Guthrie followed up by sending communications to Primmer about the status of the appeal. Guthrie is a prolific correspondent with this court, submitting numerous letters and pro se motions. *See* Docs. 2, 3; Crim. Docs. 50, 51, 52, 54, 63, 98, 101, 108. Thus, she knows how to write and send letters while incarcerated. I simply do not believe that she would have failed to send letters to Primmer about the status of her appeal if she had truly directed him to file one.

[3] Several of the motions and letters referenced in the preceding footnote relate to pro se motions by Guthrie to reduce her sentence.

7

could be overcome by persuasive, contemporaneous evidence supporting Guthrie's claim that she told Primmer to file an appeal, but no such evidence has been presented. Under Guthrie's own version of events, her only communication to Primmer concerning an appeal was the day before her sentencing hearing, when she allegedly stated that she did not want to go to prison for 10 years and wanted to appeal. She did not say anything to Primmer about an appeal during, or immediately after, the sentencing hearing.[4] Guthrie has failed to prove that she directed Primmer to file a notice of appeal.

In what appears to be an alternative argument, Guthrie argued at the evidentiary hearing that Primmer had an affirmative duty to ask her if she wanted to file an appeal. The Supreme Court has addressed this issue as follows:

> In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal. We employ the term "consult" to convey a specific meaning-advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary question: whether counsel's failure to consult with the defendant itself constitutes deficient performance.

*Flores-Ortega*, 528 U.S. at 478. The Court rejected a bright-line rule that counsel must always consult with the defendant regarding an appeal and instead held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there

---

[4] During the sentencing hearing, I advised Guthrie that even though her plea agreement included an appeal waiver, exceptions do exist and she could still attempt to appeal. Crim. Doc. 112 at 22. This discussion occurred moments before the sentencing hearing ended. Guthrie could have advised, or reminded, Primmer of her desire to appeal at that time but admits that she did not do so.

8

is a reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 479. "In making this determination, courts must take into account all the information counsel knew or should have known." *Id.* at 480. The Court identified a "highly relevant factor" as whether the conviction follows a guilty plea because a guilty plea reduces the scope of potentially appealable issues and may indicate that the defendant wants to end the judicial proceedings. Even when a defendant has pleaded guilty, the Court advised that other factors include whether the defendant received the sentenced bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. *Id.*

Here, considering the totality of the circumstances, I conclude that Primmer did not have a duty to consult further with Guthrie about an appeal. During the change of plea hearing, Guthrie agreed that she had reviewed the appeal waiver provision "carefully" with Primmer. Crim. Doc. 111 at 24. Thus, a discussion of appeal rights, and Guthrie's waiver of those rights, occurred between Primmer and Guthrie before Guthrie signed the plea agreement. Guthrie then received a 10-year sentence – the lowest sentence permitted by statute. Under these circumstances, Primmer was not deficient in failing to consult further with Guthrie regarding an appeal after the sentencing hearing.

I find that Guthrie did not ask Primmer to file an appeal, either before or after the sentencing. I further find that under the circumstances, Primmer did not have an affirmative duty to inquire as to whether Guthrie wanted to appeal after the sentencing hearing. Guthrie has failed to establish ineffective assistance of counsel in the form of failing to file a requested appeal. As such, this claim must be denied. Because I have already denied Guthrie's other grounds for relief, her § 2255 motion will be dismissed.

9

## IV. CERTIFICATE OF APPEALABILITY

In a § 2255 proceeding before a district judge, the final order is subject to review on appeal by the court of appeals for the circuit in which the proceeding is held. 28 U.S.C. § 2253(a). However, unless a circuit judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. § 2253(c)(1)(A). A district court possesses the authority to issue certificates of appealability under § 2253(c) and Federal Rule of Appellate Procedure 22(b). *See Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). Under § 2253(c)(2), a certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003); *Tiedeman*, 122 F.3d at 523. To make such a showing, the issues must be debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *See Miller-El*, 537 U.S. at 335–36 (reiterating standard).

Courts reject constitutional claims either on the merits or on procedural grounds. "'[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he [movant] must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). When a motion is dismissed on procedural grounds without reaching the underlying constitutional claim, "the [movant must show], at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Having thoroughly reviewed the record in this case, I find that Guthrie failed to make the requisite "substantial showing" with respect to any of the claims raised in her § 2255 motion. *See* 28 U.S.C. § 2253(c)(2); FED. R. APP. P. 22(b). As such, a certificate of appealability will not issue. If she desires further review of her § 2255

motion, Guthrie may request issuance of the certificate of appealability by a judge of the Eighth Circuit Court of Appeals in accordance with *Tiedeman*, 122 F.3d at 520–22.

## V. CONCLUSION

For the foregoing reasons:

1. Guthrie's claim of ineffective assistance of counsel related to a request to file an appeal is **denied.**

2. Because this order resolves the last remaining claim presented by Guthrie's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255, this action is hereby **dismissed with prejudice**.

3. A certificate of appealability will not issue with regard to any claim presented by Guthrie's § 2255 motion. If movant desires further review of her § 2255 motion, she may request the issuance of a certificate of appealability by a judge of the Eighth Circuit Court of Appeals in accordance with *Tiedeman v. Benson*, 122 F.3d 518, 520-22 (8th Cir. 1997).

**IT IS SO ORDERED.**

**DATED** this 6th day of June, 2023.

_____
Leonard T. Strand, Chief Judge